(Signed)    DAN M. RUSSELL, JR.
            United States
            District Judge

Dated: May 22, 1970

UNITED STATES of America,
Plaintiff,

v.

HINDS COUNTY SCHOOL BOARD et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

LAWRENCE COUNTY SCHOOL DISTRICT et al., Defendants.

Nos. 28030, 28042.

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1970.

David L. Norman, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for the United States.

James S. George, Monticello, Miss., for Lawrence County School Dist. and others.

Melvyn Leventhal, Jackson, Miss., for N.A.A.C.P.

Before BELL, THORNBERRY, and MORGAN, Circuit Judges.

PER CURIAM:

The findings of fact and recommendations of Honorable Dan M. Russell, Jr., United States District Judge, entered in United States v. Lawrence County School District under date of May 18, 1970 (attached and marked Appendix A), are adopted and made the opinion and order of this court.[1]

Further attention is indicated with respect to the particular objection as to the relationship between the bi-racial advisory committee to the school board and the school board. Judge Russell has implored the school board and the bi-racial committee to cooperate. Cooperation will more likely ensue if the subject matter of the activities of the bi-racial committee is spelled out. To this end, Judge Russell is directed to require that the school board consult with the bi-racial committee, in its advisory capacity, in the areas of the promulgation and main-

tenance of school zone lines, in the selection of sites for new schools, in student transfer and school transportation policies, together with such additional matters as may be assigned to the bi-racial committee by the school board for consultation and advice.

It is so ordered.

### APPENDIX "A"
### FINDINGS OF FACT AND RECOMMENDATIONS

On November 7, 1969, in a per curiam decision, the Fifth Circuit Court of Appeals in consolidated Causes Nos. 28030 and 28042 on the docket of that Court, involving 30 school systems in the Southern District of Mississippi, directed the immediate enforcement, by most of the respective school boards, of permanent student and faculty assignment plans as distinguished from interim plans, prepared by the Office of Education, Department of Health, Education and Welfare, in order to effectuate the conversion of these school systems to unitary systems. The Fifth Circuit retained jurisdiction for the purpose of modifying or amending its order of November 7, 1969, and further provided a procedure whereby the plans, as adopted could be modified by the filing of suggested modifications with this District Court, not before March 1, 1970, with directions to this Court to make findings of fact to be referred to the Appellate Court for review, and that the suggested modifications have an effective date of September 1970.

With respect to the Lawrence County school case, No. 2216(H) on the docket of this Court, the Appellate Court, directed the enforcement of the HEW plan, and on November 26, 1969, approved certain modifications thereto.

On January 7, 1970, the N.A.A.C.P. Legal and Educational Defense Fund, Inc.,[1] filed a motion for supplemental re-

1. The original order in this matter is reported. United States v. Hinds County, 5 Cir. 1969, 423 F.2d 1264. The order dated March 30, 1970, requiring reports from each school district and which is re-ferred to in Judge Russell's findings, is attached hereto and marked Appendix B.

1. By order of November 25, 1969, the Appellate Court allowed the motion of this

lief addressed to the Appellate Court in effect charging that the Appellate Court had departed from its own order of November 7, 1969, in amending the HEW plan in its order of November 26, 1969, and, by way of relief, moving that the amended plan be tested in an evidentiary hearing before this Court, that the burden of proof be upon the defendant school board to demonstrate that the Appellate Court's modifications were for education purposes only, and, in the absence of such a showing, that the HEW plan be reinstated.

To this motion the Appellate Court responded by order of January 12, 1970, allowing the movants, as members of the black community, to intervene as parties plaintiff, providing that the modified plan approved by the Appellate Court be tested in an evidentiary hearing before this Court in accordance with the procedures set out in the Appellate Court's order of November 7, 1969, notwithstanding that the motion was filed prior to March 1, 1970, and further placing the burden of proof upon the defendant school board to demonstrate that the plan, as approved by the Appellate Court, was devised for education purposes only.

Pursuant to said order this Court ordered an evidentiary hearing to be held at Hattiesburg, Mississippi, on April 20, 1970, with notice to all parties. The defendant school board responded to plaintiff-intervenors' motion, alleging affirmatively that the Lawrence County schools had become totally desegregated by virtue of the modified HEW plan; that the modifications directed by the Appellate Court had been studied and approved by officials of HEW and the Department of Justice; that the three separate high schools in the modified plan allow a broader base for student activities than if there were only one high school, and would require less transportation; and denied that McCullough, a formerly ne-

gro school, is the newest high school in the district and contains the most modern equipment and facilities in the district. Plaintiff, U.S.A., responded to this motion as follows:

"The desegregation plan presently employed by the defendant school district has effectively desegregated the past dual system. The interest of the United States is satisfied when it has been shown that the school district has developed and implemented an adequate system."

O. R. Cross and 216 others, describing themselves as parents and guardians of both white and black children in county-wide grades 9–12, filed with the Appellate Court a motion to intervene as defendants. This motion was denied by the Appellate Court's order of April 20, 1970, participation by these movants being limited to filing a brief as amicus curiae.

At the hearing the attorney for plaintiff, U.S.A., reannounced its position, stating that the modified plan has effectively integrated the Lawrence County schools; that the U.S.A. is satisfied with either plan, but approves plaintiff-intervenors' insistence on the selection of a bi-racial committee.

The permanent HEW plan, in substance, provided as follows:

| Schools | Grades | Capacity | | Students | | |
| | | Perm. | With Port. | W | N | T |
| --- | --- | --- | --- | --- | --- | --- |
| McCullough Hi | 9–12 | 1170 | | 523 | 136 | 659 |
| Monticello Jr. Hi | 7–8 | 455 | 485 | 238 | 256 | 494 |
| Monticello Elem. | 1–6 | 805 | 875 | 572 | 320 | 892 |
| Beulah Williams | 1–8 | 420 | | 103 | 305 | 408 |
| Silver Creek | 1–8 | 280 | | (Close) | | |
| | | OR | | | | |
| Beulah Williams | 1–4 | 420 | | 64 | 130 | 194 |
| Silver Creek | 5–8 | 280 | | 39 | 175 | 214 |
| Topeka-Tilton * | 1–8 | 520 | | 275 | 130 | 405 |
| New Hebron * | 1–8 | 520 | | 231 | 130 | 361 |
| TOTALS | | | | 1942 | 1277 | 3219 |

* The HEW chart originally assigned grades 1–12 to both Topeka-Tilton and New Hebron schools, but was amended, before filing, to grades 1–8 at each school.

organization to participate as *amicus curiae* in this case and others wherein the

United States of America is the named plaintiff.

The modifications by the Appellate Court are as follows:

MONTICELLO AREA:

*Monticello High:* Grades 10–12, serving all students in the Monticello and Silver Creek Areas, with 235 whites and 222 blacks for a total of 457.

*McCullough School:* Grades 5–9, serving all students in the Monticello Area, with 418 whites and 342 blacks for a total of 760.

*Monticello Elementary:* Grades 1–4, serving all students in the Monticello Area, with 347 whites and 229 blacks for a total of 567.

NEW HEBRON AREA:

*New Hebron High:* Grades 1–12, serving all students in the New Hebron Area, with 322 whites and 181 blacks for a total of 503.

TOPEKA–TILTON AREA:

*Topeka-Tilton High:* Grades 1–12, serving all students in the Topeka-Tilton Area, with 400 whites and 98 blacks for a total of 503.

*Beulah Williams—Silver Creek:* These two schools remained paired, with grades 1–4 at Beulah Williams, and grades 5–8 at Silver Creek.

*Note:* The absence of any mention in the modifications of the assignment of the 9th grade from the above area left this grade assigned to McCullough, which assignment is reflected in the following report.

The April 15, 1970, report of the Lawrence County School District, on file with the Appellate Court, a copy having been admitted into evidence herein, shows the following student enrollments under the plan as modified by the Appellate Court:

| School | Grades | White | Negro | Total |
|---|---|---|---|---|
| Monticello High | 10–12 | 215 | 220 | 435 |
| McCullough School | 5–9 | 381 | 333 | 714 |
| Monticello Elementary | 1–4 | 360 | 229 | 589 |
| New Hebron School | 1–12 | 272 | 169 | 441 |
| Topeka-Tilton School | 1–12 | 388 | 92 | 480 |
| Beulah Williams School | 1–4 | 82 | 77 | 159 |
| Silver Creek School | 5–8 | 60 | 115 | 175 |
| TOTALS | | 1758 | 1235 | 2993 |

Other matters reflected in the report are that the transportation system is desegregated, that all facilities such as gymnasiums, auditoriums, and cafeterias are being operated on a desegregated basis; the school board has not sold nor abandoned any school facility, equipment or supplies having a total value of more than $500.00; and there is a bi-racial advisory committee to the school board.

The sum. of plaintiff-intervenor objections to the current plan is the allegation that the black community of Lawrence County, reflected by the affidavits of four individuals, two of whom are husband and wife, opposes the plan as modified by the Appellate Court and desires the reinstatement of the HEW plan; that the modified plan was not endorsed by the black community nor by a racial committee; that the modified plan is educationally unsound and dominated by racial discrimination in that (a) the modified plan retains the New Hebron and Topeka-Tilton high schools, formerly white, although HEW had determined to close them; (b) HEW had determined to establish McCullough as a county-wide high school for the reason that it is the newest high school in the district with the largest capacity and most modern equipment and facilities; and (c) the modified plan thrusts the burden of new assignments upon the black students.

The school board's position is that the modified plan is working as a successful unitary plan, approved by HEW and Department of Justice officials; that Monticello High School was more recently built than McCullough School and was built specifically as a high school with more modern facilities such as library, technical equipment and athletic facilities, with a lighted football field which McCullough does not have; that the three separate high schools, provided for in the modified plan, are located so as to serve the entire county with far less transportation than if all high school students were assigned to one school; and that the three high schools offer a broader base for student participation in

student activities than could be offered in one school.

This Court is at a loss to understand why the school board is again put to the expense and legal burden of showing that the appellate court's modifications are educationally sound when it is presumed that the Appellate Court used this controlling standard in initially making the modifications and which modifications are now shown to be supported by the board and 217 named parents, white and black, of high school students, were approved by HEW and the Department of Justice, and are objected to by only four named intervenor plaintiffs.

The defendant school board, in assuming its assigned burden of justifying educationally the Appellate Court's modifications, elicited testimony from twelve witnesses, three white and four black being parents of students in the district; one witness being the president of the school board; and the four remaining witnesses being the superintendent of schools, and the principals of three high schools.

Albert Michael, Bob Newsom, and Hollis Wilson, parents of black students attending the New Hebron School, all indicated their preference of wanting their children to continue to attend New Hebron as a school offering quality education, and as the school nearest their homes and in a community where they are known. James Herron, black parent of five children attending Topeka-Tilton, one in high school, stated his preference for keeping the high school open. His children formerly went to McCullough. As a former school bus driver, he testified that it took two hours each way to transport his children to McCullough, much further than to Topeka-Tilton. He added that one son in the eighth grade at Topeka-Tilton participates in track events, which he could not do at McCullough without forfeiting his transportation. The four white parents echoed their preference for the modified plan of preserving three high schools.

W. C. Sharp, president of the school board, testified that the board's policy is to effectuate the school plan as directed by court orders and that the board has done so. That before the HEW plan, the county had seven schools, five for whites and two for blacks. That since the implementation of the modified plan, all seven schools are now integrated in proportion to the white to black ratio of the county-wide population with the exception of Monticello High where the proportion is 50–50. That the faculties are proportionally assigned and that all transportation and school activities are carried out on an integrated basis. He indicated that New Hebron for fifty years, Topeka-Tilton for twenty-five years, and Monticello High for one hundred years had historically operated as high schools and were so equipped, each with lighted football fields, gymnasiums, science laboratories and libraries. He strongly endorsed the neighborhood concept of each of these schools serving its own community, and having its own principal and staff, with a consequently closer supervision over students and closer relationships between school officials and parents. He stated that all three high schools have bands and athletic programs including football, basketball and track, with much greater participation by all students, white and black, than would exist in a single high school. He noted that the McCullough school did not have a lighted football field and, contrary to the contention of plaintiff-intervenors, was not as new a school as Monticello, nor as adaptable to high school grades. He stated that the quality of education at New Hebron and Topeka-Tilton was equal to that of Monticello, that all three offered the same curricula, and that graduates were equally admissible to colleges and universities. He noted that the HEW assignment of all high school grades to McCullough would have forced high school students to utilize equipment sized for younger grades. As to transportation, having all high school students, county-wide transported to McCullough, would greatly increase the cost of transportation, complicate bus routes, and add 35 to 45 minutes traveling time each day

each way for many students, with many having to forego participation in after-school athletics in order to have transportation. It would mean routing buses earlier to New Hebron and Topeka-Tilton, respectively, to off-load younger grade children, and then continuing on to McCullough with the high school students arriving at their school 35 to 45 minutes later.

Harold Dennison, county superintendent, noted that the HEW assignment of 659 high school students in grades 9–12 to McCullough was in error, as the actual enrollment in these grades was 903, far too many for the high school portion of the building which can accommodate a maximum of 500, further that the HEW assignments to both Monticello schools over-taxed their respective capacities, an educationally unwise if not impossible assignment, and that it was these errors which prompted the board to seek the approved modifications. He supported the board president's testimony that abolishing high school grades at Topeka-Tilton and New Hebron would add 35 to 40 minutes transportation time each way for these students and deprive them of after-school participation in band and athletic programs. He noted particularly that community pride in each high school would be lost in the absence of high school programs and athletics in the respective communities.

The principals of each of the three present high schools testified, expressing their opinions that retaining the three high schools offered a better program of quality education, offered participation in school activities to more students, contributed to a better and closer school community relationship as among teachers, students and parents, and that more black students participate in after school activities than if they were transported to McCullough.

Plaintiff-intervenors offered three witnesses, one a named plaintiff-intervenor, who is a member of several local black organizations and the N.A.A.C.P., and the other two being respectively members of the faculties of New Hebron and

Topeka-Tilton, and who, being defendants, were under subpoena. Plaintiff-intervenor, Edgar Bridges, testified as the parent of eleven children who formerly attended McCullough, with two, under the present plan, now attending Monticello. He testified as to the facilities at McCullough and Monticello, saying that they were better and larger than at New Hebron and Topeka-Tilton.

He noted critically that the science department at New Hebron was small with few chemicals visible, that no librarian was in the library, and that the vocational shop, although well equipped, was small. He noted that at Topeka-Tilton there was no vocational shop. On cross-examination he admitted that he had made only one visit to Topeka-Tilton and New Hebron schools for an hour at each place on April 11, 1970. He conceded that the woman he remembered seeing in the library at New Hebron could have been a librarian, and that the size of the workshop there could have been 32′ x 60′ instead of the 10′ x 18′ he had estimated. He further admitted that prior to January 1970, the longest bus route to McCullough was 37 miles, and he further admitted that he had consulted with the board a number of times in regard to various proposed school plans, including agreement with the board as to four high schools, a proposal made in July 1969, but denied that he was consulted about the present plan. Upon learning of the present plan, his group submitted a plan to the board, from which there was no response. The Court notes that this plan was not submitted until after the present plan was before the Appellate Court.

Swancy Brown, black classroom teacher and coach at New Hebron, stated that black students from Topeka-Tilton and New Hebron who formerly went to McCullough did take part in the McCullough activities, but that for after-school athletic and band activities transportation was a problem.

Willie Pearl Jones, black classroom teacher at Topeka-Tilton, directing her testimony to over-crowding, said that some of the classes at Topeka-Tilton are

too large for effective teaching. She admitted that the 50 students she has in the 5th grade are divided for reading classes, and that this class rotates teachers for each subject.

The Court notes that Lawrence County is roughly in the shape of a rectangle, being longer north and south than east and west. There are seven schools located in four general areas. The New Hebron School is in the extreme northeast part of the county, the paired schools of Beulah Williams and Silver Creek are near the eastern boundary, a little north of center. Monticello High, Monticello Elementary and McCullough are in the center of the county, at the county seat of the town of Monticello, and Topeka-Tilton is in the southwest portion of the county. Beulah Williams and Silver Creek schools are approximately seven miles by bus from the McCullough and Monticello schools. The New Hebron School is seventeen miles from Monticello "as the crow flies", further by bus, and Topeka-Tilton a few miles less. The county is rural with Monticello the only town of any size. Except for the concentration in the Monticello area and in and around the other schools in the county, the population is scattered, a majority of the students being transported by bus to their respective schools. The present enrollment is reflected in the latest school report, shown above, the ratio of white students to black being approximately 60 to 40.

From the evidence presented, this Court finds that the permanent HEW plan originally enforced by the appellate court was unrealistic and impractical from the standpoint of both educational values and administrative workability in assigning 903 high school students from the county at large to the McCullough School, the high school portion of which is suitable as to size and number of desks, lockers and teaching stations for no more than 420 high school students, at the most for 500 by utilizing the library and science laboratory, and in assigning more students to Monticello High and Elementary schools than they can accommodate, even with the supplement of two available, portable classrooms, not to mention the considerable cost, money-wise, to the school system and, time-wise, to the students in the increased transportation time that would be necessary in following the HEW course. The Court finds that the racial mixture in the schools of this district is in proportion to the county-wide ratio, except at the Monticello High School where the ratio is increased to 50–50, and that the degree of mixture is not less than that provided by the HEW plan.

It is doubtful that any school plan yet devised is perfect or satisfactory to all. However, in this hearing it was more than evident that the solutions offered to and approved by the Appellate Court are by far black and white. Monticello High is historically and with respect to suitability of equipment and facilities, as shown by the overwhelming testimony and photographs introduced as exhibits, the best unit for a high school. The only alternative offered to overflowing the Monticello schools, which would result from closing the high schools at New Hebron and Topeka-Tilton, is to leave these last two schools open for high school students, which in turn preserves these schools as the heart of their respective communities, affords a closer relationship beween the schools and their patrons, eliminates increased travel time up to an added hour and one-half per day for many students, and permits a broader base for student participation in class and team effort than afforded by one high school. As to plaintiff-intervenor objections that the modified plan places the burden of new assignments on black students, the Court finds this adjustment no greater under the modified plan than under the HEW plan.

## RECOMMENDATIONS

On the basis of the hearing and the above findings this Court recommends retaining for the school term beginning September 1970 the modified plan as it is now in operation. As the boundaries of the four school areas are not co-termi-

nous with the supervisors' beat or district lines, the Court recommends that the school board prepare and file with the Appellate Court and this Court a metes and bounds description of the school zone lines. As to plaintiff-intervenors' contention that the current plan is not endorsed by the black community, the Court finds, as reflected in the school report of April 15, 1970, that there is a bi-racial advisory committee to the school board, and urges the cooperation of one with the other. The Court finds that although the New Hebron and Topeka-Tilton schools have an over-all capacity in excess of the students assigned thereto, some of the individual classes appear to be larger than state recommended, and it is the recommendation of this Court that available, portable classrooms be located at these schools to alleviate such over-crowding as there may be.

This Court finds and recommends that the cost of this proceeding, including costs of a transcript of the record, be borne by plaintiff-intervenors.

Recommended and signed in duplicate, the Clerk of this Court being directed to file one signed duplicate in his office and forward the other signed duplicate to the Clerk of the U. S. Court of Appeals for the Fifth Circuit, with copies to be sent to all parties of record.

(Signed) DAN M. RUSSELL, JR.
United States
District Judge

Dated: May 18, 1970

APPENDIX "B"

ORDER

IT IS ORDERED, ADJUDGED, AND DECREED that on April 15, 1970 and December 1, 1970, and on the same date annually thereafter until further order of this court, defendants in these consolidated cases shall file with the clerk of this court a report setting forth the following information:

I.

(a) The number of students by race enrolled in the school district;

(b) The number of students by race enrolled in each school of the district;

(c) The number of students by race enrolled in each classroom in each of the schools in the district.

II.

(a) The number of full time teachers by race in the district;

(b) The number of full time teachers by race in each school in the district;

(c) The number of part time teachers by race in the district;

(d) The number of part time teachers by race in each school in the district.

III.

Describe the requests and the results which have accrued, by race, under the majority to the minority transfer provision which was a part of this court's order of November 7, 1969.

IV.

State the number of inter-district transfers granted since this court's order of November 7, 1969, the race of the students who were granted such transfers, and the school district to which the transfers were allowed.

V.

State whether the transportations system, if any, in the district is desegregated to the extent that Negro and white students are transported daily on the same buses.

VI.

State whether all facilities such as gymnasiums, auditoriums, and cafeterias are being operated on a desegregated basis.

VII.

Give brief description of any present or proposed construction or expansion of facilities.

VIII.

(a) State whether the school board has sold or abandoned any school facility,

equipment, or supplies having a total value of more than $500.00 since this court's order of November 7, 1969.

## IX.

(a) State whether there is a bi-racial advisory committee to the school board in the school district;

(b) If so, state whether the bi-racial advisory committee has submitted recommendations to the board of education;

(c) If so, state the number and disposition of such recommendations;

(d) If a bi-racial committee is in existence, state briefly the areas of the education process in which the bi-racial committee is to function