UNITED STATES of America, by John MITCHELL, Attorney General, Plaintiff,

Danita Hampton, by her mother and next friend, Yvonne Hampton, Plaintiffs-Intervenors,

v.

CHOCTAW COUNTY BOARD OF EDUCATION et al., Defendants.

Civ. A. No. 4246-66-P.

United States District Court, S. D. Alabama, S. D.

Aug. 3, 1971.

———◆———

C. S. White-Spunner, Jr., U. S. Atty., Mobile, Ala., John D. Leshy, Dept. of Justice, Washington, D. C., Vernon Z. Crawford and Frankie F. Smith, Mobile, Ala., Jack Greenberg, New York City, Solomon S. Seay, Jr., Montgomery, Ala., for plaintiff.

J. Edward Thornton, Mobile, Ala., John Christopher, Butler, Ala., for defendants.

## ORDER

PITTMAN, Chief Judge.

In compliance with the Fifth Circuit Court of Appeals' remanding of this cause to the District Court with special instructions dated June 28, 1971, 446 F.2d 57, this court has made a study of the court record and sets out the results hereinafter for the purpose of considering "whether the student assignment provisions of the plan [in effect] comply with the principles established in the recent case of Swann v. Charlotte-Mecklenburg, 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 or should be modified to bring the plan into compliance with *Swann.*"

## FINDINGS OF FACT

A chart has been prepared which reflects the projected attendance of whites and blacks at the various schools in Choctaw County when Phase II of this court's approved plan in this court's order of August 1969 went into effect for the school year beginning 1970. This chart is designated as Appendix A and is made a part of this decree. The chart indicates which schools were formerly substantially all white or all black before the implementation of Phase II of this court's plan.

At the end of the 1965–66 school year, the schools were either all white or all black. Five were all white and three were all black. Choctaw County is a rural county. There were a total of eight school buildings. It was not economically feasible to discontinue any of these eight schools. The court previously had closed one school with an attendance of less that 100 prior to the August 1969 decree. In the school year 1970–71, only one school remained of one race, to wit, East Choctaw—a formerly all black school which continues to be all black. The projected figures would have made the school 36% white and 64% black.

A second school—Lisman—formerly all black, had a projected enrollment of 33% white and 67% black. The actual ratio has been 10% white and 90% black. A third previously all black school had a projected attendance of 50% white and 50% black and an actual attendance of 15% white and 85% black. The other schools operate on 26%/74% white/black ratio; 60%/40% white/black; 56%/64% white/black; 70%/30% white/black; and 49%/51% white/black.

It is noteworthy that in the school year 1969–70, following this court's desegregation order of August 1969, there were 919 white student dropouts out of a total of 2,269 white students for the 1968–69 school year.

For the 1970–71 school year, there were 1,327 white and 2,498 black students. This represents a continued high dropout of white students, to wit, 842, but an improvement or increase of 77 white students in attendance over the preceding first year of the desegregation plan, 1969–70.

The black attendance for 1970–71 was 2,498 against 2,529 before the desegregation plan went into effect or a difference of only 31 students.

The validity of the projected figures is borne out by a comparison of black students in the various schools in actual attendance, to wit, Choctaw County High—projected 538, actual attendance 546; Butler—projected 450, actual attendance 377; Lisman—projected 532, actual attendance 524; East Choctaw—projected 490, actual attendance 517; South Choctaw—projected 168, actual attendance 149; Shady Grove—projected 215, actual attendance 219; Gilbertown—projected 126, actual attendance 100; Silas—projected 90, actual attendance 66.

In only two of the schools does the actual attendance of whites compare favorably with the projected figures, to wit, Butler, previously all white—projected 589, actual attendance 558; and Gilbertown, previously all white, projected 263, actual attendance 231. In each instance the projected figures would have placed the ratio 60%/40% white to black and 70%/30% white to black.

The great disparities where the projected figures have failed to be fulfilled by actual attendance has been in the previously all black schools, to wit, East Choctaw where the projected ratio was 36%/64% white/black and the actual attendance was 100% black; Lisman, previously all black—projected 33%/67% white/black ratio and actual attendance 10%/90% white/black; and Shady Grove, a previously all black school, projected 50%/50% white/black and actual attendance 15%/85% white/black.[1]

Given the 842 dropouts out of a white school population before desegregation of 2,269 white students, the failure for the projected figures to be fulfilled is unquestionably directly attributable to the refusal of white parents to send their children to previously all black schools.

It is not economically realistic to require a relatively economically poor, rural county such as Choctaw County to construct three new schools out of a total of eight.

## CONCLUSIONS OF LAW

This court concludes that the projected figures were made in good faith and their validity has been proven by the attendance of black students in all the schools and of white students in two schools. The court further finds the lack of actual attendance of white students as compared to the projected attendance is occasioned by a dropout or flight of white students in those schools where the projected percentages of black students exceeded white students.

The plan approved by this court August 8, 1969, was supported by valid projections of black and white students assigned to various schools. The plan has an optional majority-to-minority transfer provision which was cited with approval in *Swann,* supra, as a recognized useful part of a desegregation plan. The plan effectively dismantled the dual and separate school system in Choctaw County, and, in this court's opinion, established a unitary system.

The racial composition of the one all black school ". . . is not the result of present or past discriminatory action on their [school authority] part." *Swann,* supra. The existence of this one-race school is not the result of the plan but of voluntary action by white student flight and does not violate *Swann,* supra, which provides ". . . the existence of some small number of one-race, or virtually one-race, schools within a district is not in and of itself the mark of a system which still practices segregation by law."

For this court to continue to reassign students to various schools in an effort to secure greater racial mix than under the present plan would be a "will-o'-the-wisp" chase and flight of black and white students. It would only result in the flight of more white students from school and probably result in more segregation rather than less and the system would have a smaller school population.

In further compliance with the mandate to this court, it is ordered, ad-

---

1. All percentages used have been rounded off to the next highest number.

judged, and decreed that on December 1, 1971 and April 15, 1972, and on the same date annually thereafter until further order of this court, the defendants in this case shall file with the Clerk of this Court a report setting forth the following information: [2]

## I.

(a) The number of students by race enrolled in the school district;

(b) The number of students by race enrolled in each school of the district;

(c) The number of students by race enrolled in each classroom in each of the schools in the district.

## II.

(a) The number of full time teachers by race in the district;

(b) The number of full time teachers by race in each school in the district;

(c) The number of part time teachers by race in the district;

(d) The number of part time teachers by race in each school in the district.

## III.

Describe the requests and the results which have accrued since this court's last order dated September 21, 1970, by race, under the majority to the minority transfer provision which was a part of this court's order of August 8, 1969.

## IV.

State the number of inter-district transfers granted since this court's order of September 21, 1970, the race of the students who were granted such transfers, and the school district to which the transfers were allowed.

## V.

State whether there has been any change in the bussing system (including routes, ratio of black to white drivers, and substantial change in the racial composition of any of the buses) since September 11, 1970.[3]

## VI.

State whether all facilities such as gymnasiums, auditoriums, and cafeterias are being operated on a desegregated basis.

## VII.

Give brief description of any present or proposed construction or expansion of facilities.

## VIII.

State whether the school board has sold or abandoned any school facility, equipment, or supplies having a total value of more than $500.00 since this court's order of September 21, 1970.

## IX.

(a) State whether there is a bi-racial advisory committee to the school board in the school district;

(b) If so, state whether the bi-racial advisory committee has submitted recommendations to the board of education;

(c) If so, state the number and disposition of such recommendations;

(d) If a bi-racial committee is in existence, state briefly the areas of the education process in which the bi-racial committee is to function.

---

2. See Fifth Circuit's mandate to this court dated June 28, 1971. See also United States v. Hinds County School Board, 433 F.2d 611, 618–619 (5th Cir. 1970).

3. See this court's "Order on Plaintiff-Intervenors' Amended Motion for Supplemental Relief" dated September 21, 1970, where a findings of fact and order were entered in this cause. The last day of evidence was taken on September 11, 1970.

APPENDIX A

| NORTH | PROJECTED | | | | ACTUAL | | | | COMPARE PROJECTED | | ACTUAL | | GRADES 1970-71 ET SEQ. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W | % | B | % | W | % | B | % | W% | B% | W% | B% | |
| Choctaw County High | 404 | 43 | 538 | 57 | 193 | 26 | 546 | 74 | 43 | 57 | 26 | 74 | 9 - 12 |
| Butler | 589 | 57 | 450 | 43 | 558 | 60 | 377 | 40 | 57 | 43 | 60 | 40 | 1 - 8 |
| Lisman | 258 | 33 | 532 | 67 | 52 | 10 | 524 | 90 | 33 | 67 | 10 | 90 | 1 - 8 |
| East Choctaw | 227 | 36 | 490 | 64 | 0 | 0 | 517 | 100 | 36 | 64 | 0 | 100 | 1 - 8 |
| SOUTH | | | | | | | | | | | | | |
| South Choctaw | 277 | 62 | 168 | 38 | 192 | 56 | 149 | 64 | 62 | 38 | 56 | 64 | 9 - 12 |
| Shady Grove | 216 | 50 | 215 | 50 | 38 | 15 | 219 | 85 | 50 | 50 | 15 | 85 | 1 - 8 |
| Gilbertown | 263 | 68 | 126 | 32 | 231 | 70 | 100 | 30 | 68 | 32 | 70 | 30 | 1 - 8 |
| Silas | 120 | 57 | 90 | 43 | 63 | 49 | 66 | 51 | 57 | 43 | 49 | 51 | 1 - 6 |

TOTAL : 1327        2498