445 F.2d 388
 Lilly RUSSELL et al., Plaintiffs-Appellants, Cross-Appellees,
v.
GREENWOOD MUNICIPAL SEPARATE SCHOOL DISTRICT et al.,
Defendants-Appellees, Cross-Appellants.
GREENWOOD MUNICIPAL SEPARATE SCHOOL DISTRICT et al.,
Defendants-Appellants,
v.
UNITED STATES of America, Plaintiff-Appellee.
 Nos. 30393, 30540.
 United States Court of Appeals, Fifth Circuit.
 June 29, 1971, Rehearing and Rehearing En Banc Denied Nov. 4, 1971.
 
 John McCreery, Greenwood, Miss., James A. Lewis, John Brittain, Jr., Oxford, Miss., for appellant.
 Hardy Lott, Greenwood, Miss., for School Board.
 Ben Krage, Atty., U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., for U.S.
 Before WISDOM, COLEMAN and SIMPSON, Circuit Judges. BY THE COURT:
 
 
 1
 The motion of the defendants-appellees to dismiss the appeal for lack of jurisdiction is denied.
 
 
 2
 The judgment of the district court is vacated[1] and the cause is remanded to the district court with directions that the district court require the school board to implement a plan for the 1971-72 school year which complies with the opinions of this Court and with the principles established in Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, insofar as they relate to the issues presented in this appeal. To this end the district court is specifically directed to implement at the elementary level a plan which will accomplish a greater degree of desegregation than that achieved by the present elementary attendance zone plan.[2]
 
 
 3
 The district court also refused a school board motion to consolidate grades seven and eight with grades one through six at the various student attendance centers in the school district, apparently on the finding that to do so would lock junior high students into a highly segregated situation for two additional years. This reasoning was valid in view of the amount of desegregation achieved by the present elementary attendance zone plan. However, under a plan designed to achieve greater desegregation at the elementary school level it may or may not be correct that the consolidation of grades seven and eight with the first six grades will result in maintaining junior high children in a largely segregated situation for two additional years. The district court is directed to reconsider the question of consolidation of the seventh and eighth grades with the elementary grades in light of this Court's directive to implement an elementary plan achieving greater desegregation.
 
 
 4
 The district court shall require the school board to file semi-annual reports during the 1971-72 school year similar to those required in United States v. Hinds County School Board, 5 Cir. 1970, 433 F.2d 611, 618-619.
 
 
 5
 The mandate shall issue forthewith.
 
 
 6
 Vacated and remanded with directions.
 
 
 7
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 8
 The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.
 
 
 9
 COLEMAN, Circuit Judge (dissenting).
 
 
 10
 I respectfully dissent.
 
 
 11
 I have refrained from recording my dissent to the previous Orders entered by this Court with reference to this Municipal Separate School District. In the face of the foregoing Order I feel that I can no longer pursue that course because I believe the results will compound an already desperate public school situation. The only way to avoid it is to refrain from interfering with the sound discretion of the District Court.
 
 
 12
 The record shows that when Greenwood fell into litigation over the dismantling of its dual school system there were 3327 white pupils. Today there are 1660. The attendance of black students has fallen off by more than a hundred.
 
 
 13
 The record further shows that there are no white students attending the seventh and eighth grades in this city. Thus there will be no white students channelled from these grades into the Greenwood high school, which is successfully desegregated at this time with 566 white students and 515 black students.
 
 
 14
 Despite the appalling facts above enumerated as to the elementary schools the majority of this panel now orders the District Court 'to implement at the elementary level a plan which will accomplish a greater degree of desegregation than that achieved by the present elementary attendance zone plan'. Past experience inexorably teaches that this Order will lead inevitably not to further desegregation but to further depletion in attendance and an even higher ratio of black students only. The public school system in Greenwood will be further weakened, with no corresponding advantages to be reaped from it.
 
 
 15
 It is obvious that the parents of approximately 2000 school children have considered past requirements so physically unreasonable or so educationally unsound that they have withdrawn from the public school system, resulting in a corresponding loss of state funds for the support of public schools. This, of course, does great harm to the educational opportunities of the black children as well as the white-- probably more so.
 
 
 16
 The situation is not answered by saying, although true, that defiance cannot be permitted to defeat constitutional objectives. The right to attend a private school, freely exercised throughout the United States, cannot be regarded as defiance.
 
 
 17
 What I am objecting to is the great damage being done to public schools through the imposition of unrealistic plans which do not accomplish what they purport to accomplish.
 
 
 18
 The problems deeply endemic in the desegregation of the Greenwood Municipal Separate School District fall particularly within the knowledge and expertise of that most able District Judge who presides over this case below and who, of course, is as dedicated to the preservation of constitutional rights as any other Judge in the federal system.
 
 
 19
 Under the teachings of Swann v. Charlotte-Mecklenburg Board of Education, cited in the opinion of the majority, particularly that part which alludes to the exercise of the equitable discretion of the district judges, I would leave this case to the District Judge in the belief that he, far better than we, could best find the solution, if there is one to be found.
 
 
 20
 I think we should pay more heed to the language of the Supreme Court in Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), in which that Court stated the need to be 'a plan that promises realistically to work now' 391 U.S. at 439, 88 S.Ct. at 1694.
 
 
 21
 The promulgation of unrealistic plans, doomed to failure from the beginning, add nothing to the enforcement of constitutional principles. Regretting the necessity for disagreeing with my fellow Judges, I must, in all conscience, speak for a policy which would leave to the Judge on the ground some leeway to achieve the needed results. Being myself the product of the public school system, without which I might have suffered the pains of illiteracy, I cannot subscribe to killing the patient in a well meaning effort to cure him. I would let Judge Keady, who lives only a few miles from the scene, continue his stringent efforts to save this school system in a constitutional manner rather than prescribing further radical surgery on a patient already in extremis.
 
 
 22
 I respectfully dissent.
 
 
 
 [1]
 Under the stringent requirements of Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969), which this Court has carried out in United States v. Hinds County School Board, 5 Cir. 1969, 417 F.2d 852, and of Carter v. West Feliciana Parish School Board, 396, U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970), implemented in Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211, this Court has judicially determined that the ordinary procedures for appellate review in school desegregation cases have to be suitably adopted to assure that each system whose case is before us 'begin immediately to operate as unitary school systems'. Upon consideration of the parties' memoranda and so much of the record as is available or determined to be needed by the Court, the Court has proceeded to dispose of this case as an extraordinary matter. Rule 2, F.R.A.P
 
 
 [2]
 The present elementary attendance zones were ordered revised in an earlier opinion of this Court. See 422 F.2d 1250. Counsel on this appeal informs us that despite the directive in that opinion, the school board continues to operate under the same, or substantially the same, elementary attendance zone plan