UNITED STATES of America, Plaintiff,

v.

HALE COUNTY BOARD OF EDUCATION et al., Defendants.

Civ. A. No. 3980–66–H.

United States District Court,
S. D. Alabama, N. D.

Jan. 3, 1977.

C. S. White-Spunner, Jr., U. S. Atty., Mobile, Ala., Kaydell O. Wright, Asst. U. S. Atty., Education Section, Civil Rights Div., Dept. of Justice, Washington, D.C., for plaintiff.

Thomas W. Thagard, Jr., Montgomery, Ala., for defendants.

## ORDER

HAND, District Judge.

### THE HISTORY:

The initial efforts of the government at desegregating the Hale County schools commenced in 1966. In 1970 a motion for supplemental relief was granted resulting in an amended plan of desegregation to take effect for the school year beginning 1970–71. The United States appealed. Pursuant to the Order of remand, the present desegregation plan was adopted on August 25, 1971 over the objections of the United States; however, no appeal was lodged. It was not until February 1975 that the United States moved for further alleged needed relief. This was in the form of a motion for the enforcement of the 1971 Order and for supplemental relief.[1]

In response to this effort, on September 9, 1975, the Court entered an Order as requested by the United States requiring reports relative to the transportation system; and evaluation by the University of Alabama and the school board of each of the schools to determine whether disparate treatment was being given to one school as against another; that the non-racial objective criteria used in demotions and promotion be forthcoming in accordance with the requirements of *Singleton*; and that further consideration of and potential alteration to the Akron, Moundville and Greensboro school attendance zones be studied.

A part of the government's present allegations involve an alleged violation of *Singleton* in the demotion of a coach by the name of Eugene Royster. The defendants

1. The matter was not entirely in limbo during the interim from 1971 to 1975. Motions were filed and disposed of in 1972 dealing with collateral issues. Where applicable, these negotiations will be more fully covered later in this opinion.

contend that the government has no standing in this particular because the action is personal to him. However, by motion filed April 13, 1976, the government again raised this issue and evidence has been received in connection therewith.

Now the government is pressing for resolution of its claims, expressing the opinion that the matter has been in fieri too long. The issues are not as simple to the writer as maybe they ought to be, but even if this were not so it has taken some time to secure from the University of Alabama the results of its studies and to review the volumes of evidence offered when the matter was submitted in lieu of offering actual testimony in Court. Also, the concomitant problems of the Court resulting from the required hearings and decisions in other pending cases has presented some problems. Notwithstanding this, however, the greatest detriment to speedy solution is the Court's desperate desire to understand the Court's constitutional involvement and thus, hopefully, to be able to correctly rule on the problems involved.

## THE GEOGRAPHY:

Hale County is a rural county with only one community of any size; namely, Greensboro, which the exhibited map shows has a population of approximately 2200. Moundville is next with a population of approximately 900. Akron is third, with a population of approximately 650, and Newbern fourth, with a population of approximately 350. Only one United States highway runs through any part of the county and that is U.S. 80 that crosses the very tip of the southwest corner. The other arteries are state highways and county roads. The predominant population of this county is black, the whites being principally located in the Greensboro, Moundville and Akron areas. This in part accounts for the all black nature of the Sunshine, Sawyerville, and Newbern schools. Under the desegregation Order now applicable it was thought that the white students assigned to Sunshine, Sawyerville and Newbern schools

would attend those schools, but they opted out. Where they now attend is unknown.

## THE PROBLEMS:

The government's present complaint is still with the adopted desegregation Order or at least in its implementation. The points argued deal with the following particulars:

(a) The non-racial objective criteria has not been filed or used;

(b) There has been disparate allocation by the school board of funds and equipment among the various schools;

(c) The transportation system remains segregated;

(d) Faculty assignments have not been in accordance with the spirit of *Singleton*;

(e) The attendance at the Akron schools remains segregated;

(f) Eugene Royster has not been handled according to *Singleton* in his initial alleged demotion nor since; and

(g) Attendance at the Greensboro schools remains segregated.

An oblique allusion is made concerning the conditions prevailing in the Moundville schools; however, it is recognized that these schools have in effect been paired and are fully integrated.

## THE SOLUTIONS:

In descending order, the Court makes the following findings and rulings:

(a) Pursuant to prior Orders, the school board has prepared and filed its non-racial objective criteria for use in complying with *Singleton*. The criteria as presented appears sufficient if actually employed. Subsequent reporting as hereinafter required will determine compliance.

(b) The University of Alabama's analysis of the school board's handling of allocations to the respective institutions indicates an even handed approach in distributing equipment and funds and where correction is indicated, shows that the recommended re-

medial undertakings are being handled as rapidly as funds permit.[2] Further reporting as required should reflect continued progress in this area.

(c) The evidence indicates possible problems in the transportation area. The available highways necessarily dictate some overlapping routes. Housing patterns likewise dictate the makeup of riders on various buses. From the evidence submitted, without more explanation than the Court now has, it does appear that certain problems may exist in overlapping routes, skipping, and overcrowding.

It is therefore ORDERED that:

1. The integrity of the present zoning arrangement be maintained; and

2. The school board, through its transportation department, shall review the present bus routing and supply to the Court a proposed reconstituted bussing system that will eliminate overcrowding of buses, overlapping routes which serve to segregate those riding on any given bus, and skipping of riders that serves in any way to segregate bus ridership or is designed to exclude one race to the benefit of another. Such study and recommendations shall be made to this Court in writing within thirty days from the date of this Order, supplying the United States with a copy thereof. The government shall then have thirty days in which to review the recommendations and confer with the defendant and together work out any problems that appear to remain. The parties shall then submit to this Court an agreed plan that will have the effect of eliminating any claimed vestiges of a segregated transportation system within no more than seventy-five days of this Order.

(d) The teacher assignment problem is a little more complex. It is easy for the Court to say to the school board you will assign teachers so that the racial identifiability of a school will not be apparent. Evidence indicates it is difficult sometimes for school boards to execute such directions, especially in counties such as Hale, and particularly as it applies to those areas that are in the extreme reaches of the county where some teachers simply do not wish to teach or will not go.[3] With allowances being made for this, however, as the evidence indicates, greater progress could have been made in equalizing assignments in the schools in the more populated areas; namely, Greensboro, Moundville, Akron and Newbern.

It is therefore ORDERED, that the school board shall submit to the Court a definitive report on the present teacher assignment and an explanation, if any there be, why the present faculty assignments at Hale County High and Moundville reflect such disproportionate assignments of black to white teachers, why Akron East has such a disproportionate number of white to blacks teachers and why Akron West has such a disproportionate number of black to white teachers. This same report shall also give such explanation in regard to Greensboro East and West and shall further outline the specific problems encountered in assigning teachers to Newbern, Sawyerville and Sunshine. It will be the Order of this Court that faculty assignments be as contemplated by the 1971 desegregation Order commencing with the academic year 1977–78 unless some cogent reason is given by such report required herein and accepted by the Court. The school board is directed that the contemplated report is to be filed

2. The government's argument and attempted statistical showing of a disparate treatment contains a number of flaws. One example is the attempt to show that such exists by comparing varying assessed property evaluations. Property values are what property values are and are frequently determined by the location of the property; therefore, using that type statistic does not necessarily reflect the quality or utility of the plants in question.

3. Some cases indicate the solution is to fire those teachers who will not obey. This is often easier to decree than implement for there often is no backlog waiting to be hired. This leaves the system without teachers. Also, there is the nagging question of these citizens' constitutional rights.

with this Court within sixty days of this Order.

Turning next to those problems considered by the government to be the more pressing:

(e) The Akron zone: Where the desegregation plan considers the two schools in Akron as one system though housed on two campuses, the school board has not in fact treated them entirely as such. Akron East is the formerly all white school and Akron West is the formerly all black school. Both were constructed for capacities of approximately 600 and both now have enrollments of less than half that number. Akron East is employed for grades 1 through 12 and Akron West for grades 1 through 9. Thus the upper grades are in effect paired. No white students are "home roomed" at Akron West. The evidence also shows that of those white students remaining in the system their numbers are decreasing annually. The evidence also indicates that the two institutions have not been consolidated into one building because certain facilities at one campus are better than those at the other and for reasons of economics the present approach has been opted for. The position of the government in this matter is basically that some black students are still attending the formerly all black school and white students are still attending the formerly all white school, ergo the stigma attached to the all black school remains and will not be removed until the Court decrees that those whites now attending must attend the formerly all black school or that the formerly all black school must be consolidated with the formerly all white school. In short, bricks and mortar carry ineradicable stigma. It is also argued that the fact that the formerly all white school is now 63% black does not solve the problem nor serve to integrate the system. Cross over class assignments to take advantage of superior facilities likewise serve no purpose in the desegregation scheme.

 The Court finds no evidence of design on the part of the school board to stigmatize any student in the Akron zone.

The upper grades are totally integrated. The lower grades are predominantly integrated. An order resulting in sprinkling would serve no legitimate end. If the present trend of white flight continues the problem will solve itself in short order. Nothing has been indicated to the Court that demands that this Court substitute its judgment for that of the school board as to what is the most economic operation of these schools. Indeed, the Court does not consider that to be its function. Should the school board determine that it is more economically feasible to consolidate the schools into one, the Court does not see wherein this would violate the desegregation Order.

There is a problem though with faculty assignments. It does appear to the Court that if the school board legitimately considers the Akron schools as one system that it is making somewhat of a mockery of that determination when it maintains separate administrations for each campus with separate record keeping and the like. If the two schools are to be continued as they now are, they must be legitimately operated as one system with one administration and an assignment of teachers as contemplated by *Singleton.* The school board is therefore directed within sixty days from the date of this Order to make a complete report to the Court outlining the steps that it has and proposes to take to accomplish the spirit and intent of this Order. This report is to supplement any report required in (d) above if not fully covered therein.

 (f) The Royster matter. The next most serious problem deals with the employment of Eugene Royster as head coach in the Greensboro school. Under the desegregation Order the athletic programs of the two Greensboro schools were consolidated into one. At that time there were two coaches, one for what is now Greensboro East and one for what is now Greensboro West. Mr. Royster was head coach at Greensboro East and Mr. William Lee Compton was head coach at Greensboro West. The evidence submitted reflects that coaches in the Hale County system are

coaches secondarily and teachers primarily. Supplements are given for coaching duties but they are employed based on their teaching capabilities and more weight is given to this factor. If this is indeed the case, and the evidence indicates that it is, when the systems were consolidated, even though the evidence indicates more experience in coaching goes to Eugene Royster as well as an acknowledgment that he is a good coach, academic prowess by measurable degree goes to Mr. Compton who holds a Masters as against Mr. Royster's Bachelors degree. For the reasons demonstrated by the record and after applying the criteria, the Court cannot find as a matter of law that the school board acted improvidently in initially retaining Mr. Compton as the combined coach. The record also reflects that Mr. Royster was relieved of additional coaching obligations soon after the commencement of the second year of combined operation because of disagreements on how to coach. Only one could serve as head mentor. However, in 1975 Mr. Compton resigned as coach and there is no showing Mr. Royster was offered the right of first refusal to fill that vacancy as the desegregation Order required nor is any explanation given of why not.

It is therefore ORDERED that the school board report to the Court within thirty days from the date of this Order why this was not done and offer such explanation, if any as it may have, why Mr. Royster ought not now have the position of head coach, together with the emoluments of that office, retroactively to the date of acceptance of Mr. Compton's resignation. The government shall have fifteen days following the filing of such report to make such response as it determines necessary and if there is disagreement between the parties relative to the entitlement of Mr. Royster to the relief suggested here, argument shall be scheduled at the earliest practicable time following such reports.

In regard to the other contentions of the government relative to any other relief to be afforded Mr. Royster, the Court specifically finds that the evidence does not justify his entitlement to same.

(g) The Greensboro zone: The greatest problem area is in regard to the Greensboro schools. Here again under the desegregation Order, Greensboro is a unitary system with two campuses. Greensboro East was the formerly all black school and Greensboro West was the formerly all white school. Greensboro West is the smaller of the two institutions with a present enrollment of approximately 619 students while Greensboro East has approximately 1271 students. The facilities available at each do not lend themselves readily to pairing, a problem recognized by the United States through its counsel in conference with the Court shortly after the writer became a Judge of this Court and the matter was assigned to his docket.

The athletic program having been consolidated, the facilities for football were greater at the West campus and therefore the program was centered at the West campus. The same is applicable to basketball, baseball being held at the Lions Club Park, not on either campus. For some reason this did not attract very many of the black students to the program and at some point in time, the date slipping the Court's memory, an informal request was made of the Court that a separate athletic program be permitted at the East campus and that the students be allowed to have their own coach. With the acquiescence of the then United States Attorney assigned to the case, the Court allowed such to take place and Mr. Eugene Royster assumed those responsibilities. It was never intended, nor did anyone express the opinion that such program would assume proportions of a separate athletic program in competition with the one established on the West campus. It was merely to supplement it.

Being incapable of easy consolidation, some efforts were made at pairing classes between the two campuses. The diligence with which this was pursued nor the totality of its results is not readily reflected by the record.

■ It is important at this point to parenthetically comment upon another event bearing upon the Greensboro situation. Following the adoption of the desegregation Order, considerable attrition of white enrollment was experienced in the Greensboro schools. Indeed, it was reaching such proportions that Greensboro was becoming as other rural county schools, essentially all black. In an effort to preserve to the system the whites residing in the Greensboro area the school board, through its attorney and the United States Attorney assigned to the Hale County case and the United States Attorney assigned to the Perry County case conducted a conference in the Court's Chambers in Selma, Alabama in 1972. At that time the Court was conducting hearings resulting in the Court's consent order in this case of September 22, 1972, and hearings involving problems relative to Perry County. Without casting any aspersions toward the present United States Attorney now handling this case who is not one of those mentioned above and would have no way of knowing what transpired in connection with this informal conference, the Court feels compelled to now memorialize in this Order the Court's recollection of the agreement struck at that time, which unfortunately, was not then memorialized. In essence, this agreement was that Justice would approve a majority to majority transfer to the Greensboro West school. The total population of the Greensboro consolidated school was approximately 1300 black and 500 white and that the only way those 500 white could be preserved to the system was to allow a majority to majority movement. A concomitant to that agreement was that it was understood that class pairings would be undertaken so as to maximize contact between the races, that the facilities at Greensboro East would be upgraded, that the faculties would be assigned so as to meet the requirements of *Singleton,* that extra-curricular activities would be conducted as one and that the administration of the total school complex would be conducted as one. The evidence introduced indicates that maturation of parts of this agreement has been slow and the reasons therefor are not readily apparent.

In addition to actual upgrading of facilities at Greensboro East, the evidence reflects that the school board has secured from the State funds with which to construct a new vocational education facility. For a variety of reasons, completion of this facility has not yet been realized, but it is now the hope and expectation of the school board that such facility will be available for the academic year commencing 1977. The effect of such an institution on the Greensboro system is only the subject of present speculation but it is thought by the board that it will serve to relieve pressures that will enable more complete desegregation between the two campuses.

Like the Akron situation, though classified as one system, these two schools are obviously being conducted as two. They have separate principals, separate reporting systems and separate programs. This, the Court feels is contrary to the intent of the original desegregation Order. Likewise the assignment of teachers does not appear to be in accordance with *Singleton.*

It is therefore ORDERED:

1. That the administration of the Greensboro schools be consolidated and that they be operated as one as contemplated by the 1971 Order.

2. That all athletic programs be integrated so that they operate as one, that the better facility at either campus for the sport in question be utilized for that purpose and if transportation between the school be required as part of that program, it be furnished by the board.

3. That the faculty employed at each campus be assigned so that the racial identifiability of either campus cannot be ascertained from such assignment and that this process commence, to the extent reasonably possible, with the next semester and in any event be completed by the beginning of the 1977 academic year. The report on teacher assignment contemplated in paragraph (d) above shall not be

abridged hereby, but shall reflect these efforts.

4. That the school board file with the Court in writing a report within sixty days from the date of this Order outlining steps presently being taken to maximize contact between the two schools and the races in the academic field and what steps it will take in the future to insure the greatest maximization of this effort. A copy of this report is to be made available to the United States who shall have fifteen days from its receipt to critique the same, following which the parties will confer, if need be, to resolve any differences in approach that might exist, looking towards the end of submitting to this Court an agreement on how maximum desegregation of the classes might be accomplished. The parties are advised in this respect that the Court looks with favor on the incorporation in such report and proposed solution the effect of the new vocational school now being constructed even though it may presently be anticipatory.

### THE FUTURE:

· Within thirty days of the conclusion of the academic year 1976–77 and on a semi-annual basis thereafter, the school board will report to this Court its efforts in operating under this Order and all applicable prior Orders in a manner as provided in the case of *United States v. Hinds County School Board,* 433 F.2d 611 (5th Cir. 1970). The Court retains jurisdiction for such other and further orders as the situation might dictate.