UNITED STATES of America

v.

The **BOARD OF EDUCATION OF CLAYTON COUNTY, GEORGIA, et al.**

Civ. A. No. 14709.

United States District Court,
N. D. Georgia,
Atlanta Division.
Aug. 13, 1971.

John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., John N. Mitchell, Atty. Gen., Brian K. Landsberg, Ross L. Connealy, Dept. of Justice, Washington, D. C., for plaintiff.

John L. Watson, Jr., Jonesboro, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action brought by the Attorney General on behalf of the United States pursuant to Section 407 of the Civil Rights Act of 1964, 42 U.S.C. § 2000c–6, and the Fourteenth Amendment. Defendants are the Board of Education of Clayton County, Georgia (hereinafter referred to as the "Board"); the Board's individual members; and the Superintendent of the Clayton County School System. The court's jurisdiction is invoked by 28 U.S.C. § 1345 and 42 U.S.C. § 2000c–6. By this action plaintiff seeks to have the court enjoin "defendants, and each of them, their officers, agents, employees, successors, and all persons in active concert or participation with them from discriminating against black students attending the public schools in Clayton County on the basis of race and require them to take affirmative action to disestablish the dual system of schools based on race and to correct the effects of past discrimination based on race." [1] Plaintiff made a motion for summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56, and also made a motion for substitution of parties pursuant to Federal Rules of Civil Procedure, Rule 25.

## MOTION FOR SUMMARY JUDGMENT

In order for plaintiff to prevail on his motion for summary judgment this court must determine whether, based on the uncontested facts, it can be held as a matter of law that the Board of Education of Clayton County is operating and maintaining a "dual system" by virtue of the existence of one school containing all black students and a predominantly black faculty. From the pleadings and the record the following facts are uncontested: the Clayton County School District is composed of thirty-one (31) schools attended by twenty-five thousand two hundred twenty (25,220) white students and one thousand four hundred seventy-nine (1,479) black students; 79% of the black students in the Clayton County School District attend fully integrated schools; attendance zones were created for every school in the Clayton County School District except for W. A. Fountain School which serves grades one through six; during the 1970–71 school year W. A. Fountain was attended by three hundred eleven (311) black students and no white students; some black students who live within the attendance zones of other schools attend W. A. Fountain;

1. Government's Complaint p. 4.

the percentage of black teachers in the Clayton County School District is less than 6% of the total number of teachers; the faculty at W. A. Fountain consists of thirteen (13) black teachers and three (3) white teachers; and the students attending W. A. Fountain have "freedom of choice" whereby they may transfer to a school in which the majority of students are white.

In light of the Supreme Court's recent holding that the constitutional command to desegregate schools does not mean that every school in the community must always reflect the racial composition of the school system as a whole, Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), it can not be held on the facts before this court that Clayton County is operating and maintaining a "dual system." The Supreme Court has also held that if there are reasonably available other ways promising speedier and more effective conversion to a unitary school system, "freedom of choice" must be held unacceptable, Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1967). Therefore, neither can it be held on the facts before this court that the Clayton County School District is a unitary school system rather than a dual system. Thus, there do not appear to be enough material facts at this time to enable the court to grant a summary judgment. Accordingly, plaintiff's motion for summary judgment is denied.

## MOTION FOR SUBSTITUTION OF PARTIES

■ Plaintiff has moved to substitute certain individuals for certain other individual defendants who have been succeeded in office. Federal Rules of Civil Procedure, Rule 25(d) (1) provides that:

When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party * * * An order of substitution may be entered at any time * * *.

Therefore, plaintiffs motion for substitution of parties is granted.

## PROPOSED PLANS

■ On June 4, 1971, this court held a status hearing at which both sides were represented by counsel. At the hearing counsel for the defendant advised the court that the Clayton County Board of Education had recommended that the W. A. Fountain School be converted to a junior high school, but because of the County's failure to pass a school bond referendum, there existed a special physical problem of not being able to accommodate additional children in the remaining elementary schools. Therefore, the Board planned to convert W. A. Fountain into a junior high school serving grades 7, 8 and 9 for the school year beginning September, 1971. For that one school year, however, the Board also planned to retain grades one through six (consisting of approximately one hundred sixty (160) black students and no white students) at W. A. Fountain. Under this plan additional elementary schools would have been built by the school year commencing September, 1972, and the one hundred sixty (160) students in grades one through six at W. A. Fountain would all be transferred to predominantly white elementary schools. W. A. Fountain would then become an all junior high facility.

Counsel for the government advised the court that the government had no objection to the conversion of W. A. Fountain into a junior high school so long as the proper racial balance was maintained, but that the government did object to the retention of the all black grades one through six at that facility even for a one year period. At this time the court informed both sides that it would not accept the Board's plan with respect to the retention of grades one through six (consisting of one hundred sixty (160) black students and no white students) at the W. A. Fountain School.

The court then advised the parties that some plan would have to be devised either immediately to convert W. A. Fountain into an all junior high facility or, in the alternative, to convert it into a fully integrated facility consisting of a combination junior high and grades one through six. The defendant Board then suggested that they could convert W. A. Fountain from an elementary to a junior high and that they would devise a plan detailing this and disbursing the grades one through six (now at W. A. Fountain) to other schools in the county.

The court, after both sides waived the necessity for a formal order, requested the defendant Board to prepare a plan in the form of a proposed order and to present it to the government within thirty-five (35) days. The court requested the government to submit the Board's plan with its comments to this court within ten (10) days after it received the plan from the defendant Board.

In response to the court's request the defendant Board submitted the following plan:

A. Transfer all of the pupils that attended W. A. Fountain School during the term 1970–71 grades one through five to predominantly white schools.

B. For the 1971–72 school year all seventh grades from elementary schools feeding the Forest Park Junior High School and G. P. Babb Junior High School will attend the W. A. Fountain School. Those students in the 1970–71 sixth grade class at W. A. Fountain School will attend the W. A. Fountain School.

The elementary feeder schools referred to above are Mountain View; Hendricks Drive; East Clayton Edmonds; Ash Street; Lake City; Haynie; Morrow and Tara.

C. No student assigned to the W. A. Fountain seventh grade will be permitted to transfer to any school where his race is in the majority.[2]

Under this plan W. A. Fountain School would consist of a student population of seven hundred thirty-five (735) (91%) white students and seventy (70) (9%) black students and a faculty of twenty-four (24) white teachers and five (5) black teachers.

The government approved the Board's plan stating that "[s]uch a plan would appear to eliminate the vestiges of the dual system in Clayton County."[3] In its response, however, the government stated that:

2. Any order issued by this court should enjoin the defendants from discriminating against black students attending the public schools in Clayton County on the basis of their race.

3. The defendants should be required to implement the provisions outlined in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir., 1969) * * * in regard to desegregation of faculty and other staff, transportation, school construction and site selection, and attendance outside the system of residence.

4. The defendants should be required to file with the court and serve copies upon the plaintiff after the commencement of the 1971–72 school year, and annually thereafter until further order of the court, a report setting forth the information described below:

(a) the number and race of students enrolled in each school in the district;

(b) the number and race of the faculty assigned to each school in the district;

(c) brief descriptions of any present or proposed construction or expansion of facilities; and

(d) a statement as to whether the school board has:

2. Defendants' Proposed Order, p. 2.

3. Response to Defendants' Proposed Desegregation Plan by the United States, p. 2.

1. Sold or abandoned any facility, equipment, or supplies having a total value of more than $500.00 since the date of this order;

2. Sold, abandoned, or otherwise transferred any real property of this school district since the date of this order; and

3. Closed or discontinued use of any school property, building or facility since the date of this order.[4]

Defendant Board has objected to the above requirements sought by the government on the basis that they are "harsh and unnecessary in this case because as it has been noted the School District as a whole meets the requirements of a fully intergregated (sic) system; however, there is one school in the system that did not meet the requirements for an intergregated (sic) school and the suit brought was for the purpose of intergregation (sic) in the W. A. Fountain School."[5]

The Fifth Circuit has established uniform provisions to be followed by the district courts in school desegregation cases. United States v. Hinds County School Board, 433 F.2d 611 (5th Cir. 1970) (providing for the filing of semi-annual reports); Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969) (guidelines for desegregation of faculty and other staff, school construction and site selection and attendance outside system of residence). The requirements of which defendant complains are the standard provisions required by the above cited cases and therefore must be included.

The Supreme Court, however, in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), stated that:

It does not follow that the communities served by such systems will remain demographically stable, for in a growing mobile society, few will do so. Neither school authorities nor district courts are constitutionally required to make year-by-year adjustments of the racial composition of student bodies once the affirmative duty to desegregate has been accomplished and racial discrimination through official action is eliminated from the system. This does not mean that federal courts are without power to deal with future problems; but in the absence of a showing that either the school authorities or some other agency of the State has deliberately attempted to fix or alter demographic patterns to affect the racial composition of the schools, further intervention by a district court should not be necessary. at 31, 91 S. Ct. at 1283.

Following the above guidelines in *Swann* and this court's recent order in the Atlanta School Board case[6], upon implementation of this order the Clayton County School District will be judicially declared unitary and a dismissal will be directed on January 1, 1972. This court, however, retains its inherent jurisdiction to deal with future problems.

Accordingly, the court orders and directs defendants as follows:

(1) Beginning with the 1971–72 school year:

(a) Transform the W. A. Fountain school into a seventh grade center by assigning to it all seventh grades from elementary schools feeding the Forest Park Junior High School and G. P. Babb Junior High School. (The elementary feeder schools referred to are Mountain View, Hendricks Drive, East Clayton Edmonds, Ash Street, Lake City, Haynie, Morrow and Tara);

(b) Assign students in grades 1–6 living in the Fountain area to the nearest elementary schools;

(c) Allow those students in the 1970–71 sixth grade class at W. A.

4. *Id.*

5. Defendant's Response to the Response of the United States to Defendant's Proposed Desegregation Plan, p. 1.

6. Calhoun v. Cook, Civil Action No. 6298 (July 28, 1971) (on remand from the 5th Circuit) at p. 12.

Fountain school to attend the seventh grade at W. A. Fountain school;

(d) Permit no student assigned to the W. A. Fountain school seventh grade to transfer to any school where his race is in the majority;

(e) Assign twenty-four (24) white and five (5) black teachers to the W. A. Fountain school with the stipulation that teachers shall be transferred to achieve this ratio without demotion.

2. Defendants are hereby enjoined from discriminating against black students attending the public schools in Clayton County on the basis of their race;

3. Defendants are hereby required to file with the court and serve copies upon the plaintiff after the commencement of the 1971–72 school year, and annually thereafter until further order of the court, a report setting forth the information described below:

(a) The number and race of students enrolled in each school in the district;

(b) The number and race of the faculty assigned to each school in the district;

(c) Brief descriptions of any present or proposed construction or expansion of facilities; and

(d) A statement as to whether the school board has:

1. Sold or abandoned any school facility, equipment or supplies having a total value of more than $500.-00 since the date of this order;

2. Sold, abandoned or otherwise transferred any real property of this school district since the date of this order; and

3. Closed or discontinued use of any school property, building or facility since the date of this order.

4. Defendants shall announce and implement the following policies:

(a) The principals, teachers, teacher-aides and other staff who work directly with children at a school shall be so assigned that in no case will the racial composition of a staff indicate that a school is intended for black students or white students. The district shall assign the staff described above so that the ratio of black to white teachers in each school, and the ratio of other staff in each, are substantially the same ratio as to the teachers and other staff, respectively, in the entire school system.

The school district shall, to the extent necessary to carry out this desegregation plan, direct members of its staff as a condition of continued employment to accept new assignments.

(b) Staff members who work directly with children and professional staff who work on the administration level will be hired, assigned, promoted, paid, demoted, dismissed and otherwise treated without regard to race, color or national origin, except to the extent necessary to correct discrimination.

(c) If there is to be a reduction in the number of principals, teachers, teacher-aides or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition, if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color or national origin different from that of the individual dismissed or demoted until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff mem-

bers under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

"Demotion" as used above includes any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

### TRANSPORTATION

The transportation system shall be completely reexamined regularly by the superintendent, his staff and the school board. Bus routes and the assignment of students to buses will be designed to insure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis.

### SCHOOL CONSTRUCTION AND SITE SELECTION

The size and location of new school buildings and additions to existing buildings can significantly affect desegregation now and in the future.

All school construction, school consolidation and site selection (including the location of any temporary classrooms) in this system shall be done in a manner which will prevent the recurrence of the dual school structure once this desegregation is implemented.

### ATTENDANCE OUTSIDE SYSTEM OF RESIDENCE

If the School District grants transfers to students living in the district for their attendance at public schools outside the district or if it permits transfers into the district of students who live outside

the district, it shall do so on a non-discriminatory basis, except that it shall not consent to transfers where the cumulative effect will reduce desegregation in either district or reinforce the dual school system.

It is so ordered.